IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JANE DOE | § | |
|     Plaintiff | § | |
| | § | |
| V. | § | CAUSE NO. _____ |
| | § | |
| THE UNIVERSITY OF TEXAS | § | A03CA 260SS |
| AND SELLERS BAILEY, III, | § | |
| INDIVIDUALLY AND IN HIS | § | |
| OFFICIAL CAPACITY | § | |
|     Defendants. | § | |

## COMPLAINT AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT comes now Plaintiff, Jane Doe, complaining of the University of Texas and Sellars Bailey, III, Defendants, and for causes of action would show the Court and jury as follows:

### I. Parties

1. Plaintiff Jane Doe is a resident of the State of Texas and at all times mentioned was a resident of the City of Round Rock, Williamson County, Texas. Plaintiff's actual name is not used in this complaint in order to preserve her privacy in a matter of a highly sensitive and personal nature.

2. Defendant the University of Texas (the "University") is a duly constituted governmental entity organized and existing under the laws of the State of Texas and may be served through its president, Larry R. Faulkner, who may be served at the University of Texas at Austin, Main Building Room 400 (G3400), Austin, Texas 78713-8920.

3. Defendant Sellars Bailey, III, ("Bailey") is an individual whose residence is located in Austin, Texas. At all times mentioned in this complaint, Bailey was a police officer employed by the University. Plaintiff sues Bailey in his individual and official capacity.

## II. Jurisdiction/Venue

4. This action arises under the Constitution of the United States, particularly the Fourth Amendment to the Constitution of the United States, and under the laws of the United States, particularly the Civil Rights Act, Title 42 U.S.C.§ 1983. As such, jurisdiction of this Court is invoked pursuant to 42 U.S.C. §§ 1331 and 1343.

5. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's tort claims because they are so related to the claims within the Court's jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

6. Venue is proper in the Western District of Texas, Austin Division, pursuant to 28 U.S.C. § 1391 because the events establishing the basis for Plaintiffs' causes of action occurred within the Western District, Austin Division.

## III. Facts

7. From August 2000 to September 2002, Plaintiff was a student at the University.

8. On or about April 30, 2001, at approximately 3:37 p.m., Plaintiff was driving an automobile on the University campus and was involved in a minor traffic accident in which she accidentally hit a stop sign located on a curb.

9. A University employee at a security gate very near the scene of the accident gestured to Plaintiff that he had seen the accident. Plaintiff assumed that the University police had been called

and waited in her car at the scene of the accident.

10. Approximately 10 minutes after the accident, Defendant Bailey, who was working as a University police officer, arrived at the accident scene in a University police patrol car. Bailey got out of his police car, approached Plaintiff, and began talking to Plaintiff while she remained in her car. Bailey wore a police uniform and carried a loaded gun.

11. Bailey's first comment spoken to Plaintiff was to the effect that "I'm glad I got this call." Plaintiff told Bailey what had happened relating to the accident, and Bailey told Plaintiff that it was necessary for her to follow him in her car. Bailey then drove in his University police car a short distance to a nearby parking area located on the University campus. Plaintiff followed Bailey in her car.

12. At the parking area, Bailey instructed Plaintiff to park her car and get into his police car, which she did. Plaintiff believed Bailey was taking her to the University police station, but Bailey instead drove Plaintiff to a nearby campus parking garage.

13. When Bailey drove Plaintiff into the parking garage, Plaintiff began feeling frightened and apprehensive because she did not believe there was any legitimate reason that Bailey would need to take her in this parking garage. Plaintiff noticed signs indicating there were cameras in the parking garage and pointed them out to Bailey. Bailey did not respond and said nothing to Plaintiff while he drove up the levels of the garage. As Bailey drove up the levels of the parking garage in silence, Plaintiff's apprehension turned to abject terror as she feared for her physical safety and her life.

14. At the fifth level of the parking garage, where there were no other occupied vehicles

or persons in sight, Bailey parked the car. He immediately began rubbing his penis through his pants. Bailey then unzipped his pants and exposed his erect penis to Plaintiff. Bailey did not say anything to Plaintiff. Bailey, who is a muscular and stocky man, quickly and forcefully grabbed Plaintiff, who is petite and slender in build. Bailey forcefully yanked Plaintiff towards him forcing Plaintiff's face down to his penis. Plaintiff continued to be in fear for her life. Bailey forcefully grabbed the back of Plaintiff's head, forcing his penis into Plaintiff's mouth and forcing her to perform oral sex. Bailey ejaculated in Plaintiff's mouth and on her face.

15. After ejaculating in Plaintiff's mouth and on her face, Bailey then pulled a paper towel from the police car's glove box and handed a piece of the paper towel to Plaintiff. Plaintiff wiped her face and spit Bailey's semen into the paper towel. Bailey took the paper towel from Plaintiff and wiped his penis with a paper towel.

16. After the sexual assault, Bailey drove Plaintiff out of the parking garage. On his way out of the garage, Bailey stopped at a yellow trash can located in the garage. Bailey threw the paper towels that he had used to wipe his penis and that Plaintiff had used to wipe her face and spit out Bailey's semen.

17. Bailey left the parking garage, drove Plaintiff to her automobile, and let her out of the police car. During this automobile ride and as Bailey let Plaintiff out of the police car, Bailey did not say anything to Plaintiff.

18. After Bailey drove away, Plaintiff immediately drove her vehicle to the location of the trash can in the parking garage and retrieved the paper towels that Bailey had thrown away and that had been used in the assault. 19. After retrieving the towels as evidence, Plaintiff

COMPLAINT AND JURY DEMAND					Page 4 of 9
4

immediately went to the University's Student Services Building and reported that she had been sexually assaulted by a University police officer. Plaintiff was interviewed by a female University police officer and gave the paper towels to the officer. Plaintiff did not know Bailey's name at the time, but described Bailey as a black male, stocky build with short, close cut hair, approximately 5'8" and 30 years of age. Plaintiff was taken to St. David's Hospital for examination.

20. Upon information and belief, in or about October 1999, prior to Bailey's sexual assault against Plaintiff but while Bailey worked as a police officer for the University, Bailey was the subject of a serious sexual harassment complaint. A female security guard employed by the University, whose identity is unknown, filed a complaint alleging that Bailey took her in his University police car on a "tour of off-campus buildings." The complaint alleged that while in the police car, Bailey asked the female security guard to photograph her breasts and genitals and show the pictures to him, propositioned her for a "threesome," and asked her if she would like to see pictures of his genitals. The female security guard refused Bailey's advances. She stated in the complaint that as Bailey drove her around North Austin neighborhoods, she was in grave fear that Bailey was going to rape her. She also stated that she was aware that Bailey kept pornographic photos of women on or in his locker while working at the University. University administrators allegedly investigated the female security guard's complaint, concluded that the allegations were unfounded, and fired the woman.

21. Plaintiff has been extremely traumatized by Bailey's sexual assault and has experienced severe pain, emotional distress, and anxiety.

22. Plaintiff would show that she received counseling at Defendant University's Student

Health Services Center for approximately one semester. Although Plaintiff required and requested additional counseling, the Student Health Services Center prevented Plaintiff from continuing her therapy because she was informed that she had "reached her limit".

23. Defendant University of Texas' demonstrated callousness and insensitivity with respect to Plaintiff's injuries and suffering have been compounded by the fact that not a single representative of Defendant University has even so much as apologized to Plaintiff for the depraved and violent acts of Defendant Bailey

## IV. Violation of Constitutional Rights

24. Plaintiff reincorporates and realleges the preceding paragraphs as if expressly set forth at length.

25. At all times mentioned in this complaint, Defendant Bailey and the University acted under color of the laws, statutes, policies, customs, and usages of the University and/or the State of Texas.

26. The University had a policy or policies and/or a custom or customs in place that enabled its agents and employees to act with deliberate indifference to the constitutional rights of individuals, including failure to properly and adequately train, monitor, investigate, discipline, or take other necessary action to address sexual harassment and/or assaults by University employees.

27. The University's exercise of these established policies and/or customs violated the Plaintiff's clearly established rights under the United States Constitution.

28. Defendants acted willfully, deliberately, maliciously, or with reckless disregard for the Plaintiff's constitutional rights.

29. The aforementioned facts demonstrate that Defendants Bailey and the University, acting by and through its agents, deliberately and intentionally violated Plaintiff's civil rights in violation of 42 U.S.C. § 1983.

## V. Tortious Assault

30. Plaintiff reincorporates and realleges the preceding paragraphs as if expressly set forth at length.

31. The aforementioned facts demonstrate that Defendants Bailey and the University, acting by and through its agents, are liable to Plaintiff for the intentional and tortious sexual assault of Plaintiff.

## VII. Negligence

32. Plaintiff reincorporates and realleges the preceding paragraphs as if expressly set forth at length.

33. The aforementioned facts demonstrate that Defendants Bailey and the University, acting by and through its agents, are liable to Plaintiff for Defendants' negligent acts that directly and proximately caused severe injury and damages to Plaintiff. The University's negligent acts include, but are not limited to, failure to monitor University employees, failure to monitor, install and/or properly use University equipment or property including police radio and dispatch equipment, surveillance cameras, police vehicles, and other property, failure to properly and adequately train, monitor, investigate, discipline, or take other necessary action to address sexual harassment and/or assaults by University employees or that otherwise may occur on the University campus.

## V. Damages

34. As a result of Defendants' conduct, Plaintiff has suffered serious and substantial damages, including but not limited to severe emotional distress, damage to reputation, lost earnings, costs of court, legal expenses and attorneys fees.

35. To the extent permitted by law, Plaintiff seeks punitive damages against Defendants, injunctive relief against the University, and all other damages or remedies to which Plaintiff is entitled.

### VI. Jury Demand

36. Plaintiff requests a trial by jury.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer here, and upon final hearing by trial to a jury hereof, Plaintiff has judgment as follows:

1. compensatory damages;

2. punitive damages;

3. court costs;

4. legal expenses;

5. reasonable attorneys fees;

6. prejudgment and post-judgment interest as allowed by law;

7. injunctive relief;

8. such other and further relief to which Plaintiff may show herself justly entitled.

Respectfully submitted,

**HOWARD & KOBELAN**
100 Congress, Suite 1720

Austin, Texas 78701
512-480-9300
512-480-9374 (Telecopy)

_____
Derek A. Howard
Texas State Bar No. 10064600
**ATTORNEYS FOR PLAINTIFF**