IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JANE DOE § | | |
| Plaintiff § | | |
| § | | |
| v. § | CAUSE NO. A 03 CA 260 SS | |
| § | | |
| LARRY R. FAULKNER, § | | |
| JEFFREY VAN SLYKE, § | | |
| AND SELLERS BAILEY, III, § | | |
| INDIVIDUALLY AND IN THEIR § | | |
| OFFICIAL CAPACITIES § | | |
| Defendants. § | | |

## PLAINTIFF'S RESPONSE TO MOTION OF DEFENDANTS
## VAN SLYKE AND FAULKNER FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Jane Doe, Plaintiff, and files this Plaintiff's Response to the Motion of Defendants Van Slyke and Faulkner for Summary Judgment and shows the Court as follows:

### A. Introduction

Plaintiff was forcefully and brutally sexually assaulted by Defendant Sellers Bailey, a police officer who worked for the University of Texas at Austin (the "University") and who had a history of prior serious sexual misconduct and harassment while working at the University. Accordingly, Plaintiff alleges that her civil rights were violated under 42 U.S.C.A. § 1983 by Bailey. Plaintiff also alleges violations by Bailey's supervisor and University police chief, Jeffrey Van Slyke, and by University president, Larry Faulkner, for their complete failure to supervise and discipline Bailey, in spite of the fact that they knew or should have known of Bailey's prior serious sexual misconduct.

Defendants Van Slyke and Faulkner attempt to avoid liability by invoking the doctrine of qualified immunity. The defense fails, however, because both Defendants had clear knowledge of prior

serious sexual misconduct on the part of Defendant Bailey. In spite of this knowledge, both Defendants failed to terminate Bailey or take action that could have prevented the subsequent assault on Plaintiff. Moreover, other evidence presented with this Response indicates a pattern by Defendants of failing to take appropriate action in response to complaints of sexual harassment. (*See* Affidavit of Janine Mather.) Finally, Plaintiff has moved for a continuance of a determination on this Motion and believes that discovery will substantiate Plaintiff's claim that Defendants acted with deliberate indifference to Plaintiff's constitutional rights. *See* Plaintiff's Motion for Continuance to Conduct Discovery, which is incorporated herein.

## B. Statement of Facts

As set forth in Plaintiff's First Amended Complaint, Plaintiff was sexually assaulted on April 30, 2001, by Defendant Bailey, who at the time was working as a University police officer.[1] Plaintiff was involved in a minor traffic accident and Defendant Bailey had been called to the scene by another University employee. Bailey's first comment spoken to Plaintiff was to the effect that "I'm glad I got this call." Bailey told Plaintiff that it was necessary for her to follow him in her car. Bailey then drove in his University police car a short distance to a nearby parking area located on the University campus. Plaintiff followed Bailey in her car.

At the parking area, Bailey instructed Plaintiff to park her car and get into his police car, which she did. Plaintiff believed Bailey was taking her to the University police station, but Bailey instead drove Plaintiff to a nearby campus parking garage. When Bailey drove Plaintiff into the parking garage, Plaintiff began feeling frightened and apprehensive because she did not believe there was any legitimate

---

[1] Although Defendants correctly note that Defendant Bailey was acquitted of the criminal charges brought against him, the acquittal *does not* establish that Bailey did not assault Plaintiff nor otherwise prevent Plaintiff from pursuing a remedy for violations of her civil rights.

reason that Bailey would need to take her in this parking garage. Plaintiff noticed signs indicating there were cameras in the parking garage and pointed them out to Bailey. Bailey did not respond and said nothing to Plaintiff while he drove up the levels of the garage. As Bailey drove up the levels of the parking garage in silence, Plaintiff's apprehension turned to terror as she feared for her physical safety and her life.

At the fifth level of the parking garage, where there were no other occupied vehicles or persons in sight, Bailey parked the car. He immediately began rubbing his penis through his pants. Bailey then unzipped his pants and exposed his erect penis to Plaintiff. Bailey did not say anything to Plaintiff. Bailey, who is a muscular and stocky man, quickly and forcefully grabbed Plaintiff, who is petite and slender in build. Bailey forcefully yanked Plaintiff towards him forcing Plaintiff's face down to his penis. Bailey forcefully grabbed the back of Plaintiff's head, forcing his penis into Plaintiff's mouth and forcing her to perform oral sex. Bailey ejaculated in Plaintiff's mouth and on her face. Plaintiff was in complete fear for her life.

After ejaculating in Plaintiff's mouth and on her face, Bailey then pulled a paper towel from the police car's glove box and handed a piece of the paper towel to Plaintiff. Plaintiff wiped her face and spit Bailey's semen into the paper towel. Bailey took the paper towel from Plaintiff and wiped his penis with a paper towel.   After the sexual assault, Bailey drove Plaintiff out of the parking garage. On his way out of the garage, Bailey stopped at a yellow trash can located in the garage. Bailey threw the paper towels that he had used to wipe his penis and that Plaintiff had used to wipe her face and spit out Bailey's semen.

Bailey left the parking garage, drove Plaintiff to her automobile, and let her out of the police car. During this automobile ride and as Bailey let Plaintiff out of the police car, Bailey did not say anything

to Plaintiff. After Bailey drove away, Plaintiff immediately drove her vehicle to the location of the trash can in the parking garage and retrieved the paper towels that Bailey had thrown away and that had been used in the assault. After retrieving the towels as evidence, Plaintiff immediately went to the University's Student Services Building and reported that she had been sexually assaulted by a University police officer. Plaintiff was interviewed by a female University police officer and gave the paper towels to the officer. Plaintiff did not know Bailey's name at the time, but described Bailey as a black male, stocky build with short, close cut hair, approximately 5'8" and 30 years of age. Plaintiff was taken to St. David's Hospital for examination.

In or about October 1999, prior to Bailey's sexual assault against Plaintiff but while Bailey worked as a police officer for the University, Bailey was the subject of a serious sexual harassment complaint filed by a female security guard who had been employed by the University and whose identity has been disclosed by Defendants as Michelle Binkley. Although the Defendants attempt to characterize Binkley's complaint as a groundless complaint of consisting solely of "verbal harassment," Defendants' exhibits submitted with their motion tell a much different story that is eerily similar to Plaintiff's sexual assault. *See* Defendants' Exhibit 11, Attachment C. According to Binkely's complaint, Bailey took the female security guard in his University police car on a "tour of off-campus buildings." While in the police car, Bailey asked the female security guard to photograph her breasts and genitals and show the pictures to him, propositioned her for a "threesome," and asked her if she would like to see pictures of his genitals. The female security guard refused Bailey's advances. She stated in the complaint that as Bailey drove her around North Austin neighborhoods, she was "scared and worried about what Bailey was going to do to her, fearing he was going to rape her" and asked Bailey two times to be taken back to the campus. Defendants' Exhibit 11, Attachment C, page 2.

Another University employee also submitted a statement that Bailey kept pornographic photos of women on the outside and inside of his locker while working at the University. Defendants' Exhibit 11, Attachment C, page 43. In spite of this information, investigations conducted under the authority of Defendants Van Slyke and Faulkner dismissed the female security guard's complaint, concluded that the allegations were unfounded, and supported the firing of the female security guard. *See* Defendants' Exhibit 10, Attachment C (December 23, 1999, letter from "Office of the President" to Michele Binkley, copied to Defendants Van Slyke and Faulkner).

While no discovery has taken place in this action, Plaintiff submits the Affidavit of Janine Mather attached to Plaintiff's Motion for Continuance. In May, 2000, Mather was sexually harassed and assaulted by another University police officer, Lieutenant Ronald Stalder, who deliberately touched and rubbed her thigh and grabbed and slapped at her buttocks in an extremely sexual and inappropriate manner. Mather reported the incidents to the Van Slyke, but her complaint and other complaints from women regarding sexual harassment were not taken seriously. The same individuals who investigated the prior sexual harassment complaint against Bailey, Lieutenant Robert Ewan and EEOC director Linda Milstone, conducted investigations relating to Mather's allegations of sexual harassment. According to Mather, Ewan and Milstone did not treat her allegations seriously or fairly.

Mather also is aware of and familiar with other allegations of misconduct and sexual harassment by University police officers which were brought to the attention of Van Slyke and the University, including another allegation of misconduct that Mather brought against a male University police officer. Mather is familiar with the results of the investigations and found that Lt. Ewan did not question important witnesses who could corroborate key facts, did not seek any follow-up evidence that would rebut the defenses made, and that Lt. Ewan made unjustified and unsupported presumptions in favor

of male police officers. Mather swears that based on her experiences and the thirteen years that she worked as an officer in the University police department, there was a pattern of tolerating misconduct by male police officers and not taking seriously allegations of sexual harassment or misconduct brought forward by women.

The uncontradicted evidence set forth in Plaintiff's Complaint, as well as the additional evidence presented in response to Defendants' Motion for Summary Judgment, clearly raise fact issues as to whether Defendants acted with deliberate indifference towards the constitutional rights of Plaintiff. Additionally, Plaintiff has demonstrated in her Motion for Continuance that additional discovery will lead to further evidence to support her claims and refute Defendants' assertion of qualified immunity.

### C. Objections To Defendants' Summary Judgment Evidence.

Plaintiff objects to Defendants' Exhibits 1 through 9 and the attachments to Exhibits 10 through 14 on the grounds that the documents are not properly authenticated, are hearsay, and are documents put forth by an interested party that are not corroborated and contain contradictory facts. Plaintiffs further object to these Exhibits on the grounds that they contain expert opinions by persons who are not properly qualified under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993). Plaintiff objects to Exhibit 11, the Affidavit of Baldridge, because it is not dated and/or properly sworn to. Plaintiff objects to Exhibits 11 through 14 because they are affidavits put forth by an interested party that are not corroborated, contain contradictory facts, and are contradicted by evidence put forth by Plaintiff.

### D. Arguments and Authorities

To prevail on Plaintiff's claims under 42 U.S.C. § 1983 against Defendants Van Slyke and Faulkner for failure to supervise, Plaintiff must present some evidence suggesting: (1) a failure to

supervise Defendant Bailey, (2) a causal connection between the failure to supervise and the violation of Plaintiff's rights; and (3) the failure to supervise amounted to deliberate indifference to the plaintiff's constitutional rights. *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003). Although supervisory liability in a civil rights context can be based on a single incident, *see City of Canton v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), *Brown v. Bryan County, OK*, 219 F.3d 450, 458-59 (5th Cir. 2000), Defendants' liability in the case at hand is not premised on a single, isolated incident. Rather, in addition to the intolerable sexual assault of Plaintiff, Plaintiff has presented evidence that Defendants Faulkner and Van Slyke were aware of credible evidence of serious sexual misconduct on several occasions by Defendant Bailey and other University police officers. Although the Defendants characterize the complaint brought by the female security guard Binkley as a one instance of strictly "verbal harassment," Defendants' own evidence demonstrates that Binkley was "scared and worried about what Bailey was going to do to her, fearing he was going to rape her" and asked Bailey two times to be taken back to the campus. Defendants' Exhibit 11, Attachment C, page 2. Another University employee also submitted a statement that Bailey kept pornographic photos of women on the outside and inside of his locker while working at the University. Defendants' Exhibit 11, Attachment C, page 43.

Defendants' minimization of Bailey's behavior as "one instance" of "verbal harassment," both at the time of the investigation and in their Motion for Summary Judgment, is telling evidence that Defendants acted with deliberate indifference. Additionally, the Affidavit of Janine Mather further suggests that Defendants tolerated a pattern of misconduct by male police officers and failed to take seriously allegations of sexual harassment or misconduct brought forward by women. Consequently, Plaintiff's claim is not based on one isolated instance.

Defendants argue that Bailey's prior instances of sexual misconduct are not significant enough

and that the Defendants' response to this behavior was sufficient as a matter of law, citing *Doe v. Taylor Ind. School Dist.*, 15 F.3d 443 (5th Cir. 1994) (en banc) and *Southard v. Texas Bd. Of Criminal Justice*, 114 F.3d 539 (5th Cir. 1997). Defendants' reliance on these cases is misguided. In *Taylor*, the court, in fact, found sufficient evidence to support supervisory liability of a school principal who failed to take action necessary to stop a teacher's sexual abuse. *See also Smith v. Brenoettsy*, 158 F.3d 908 (5th Cir. 1998) (the reasonableness of a supervisor's response as an element of qualified immunity is a question for the trier of fact). In *Southard*, although the court found that the director of the Texas Department of Criminal Justice did not act with deliberate indifference in spite of a number of prior allegations of sexual harassment, the court noted that the director oversaw 108 prison units and approximately 38,000 employees. 114 F.3d at 552. In the case at hand, police chief Van Slyke was the direct supervisor of Bailey and of a relatively small number of employees. While Defendant Faulkner oversaw a far greater number of employees, the investigation of Bailey's prior sexual misconduct was, in fact, conducted by the "Office of the President" with actual notice to Faulkner. *See* Defendants' Exhibit 10, Attachments A and C.

Defendants also incorrectly argue that because they took *some* action by initiating investigations into the Binkley allegations, they are subject to qualified immunity as a matter of law. In *Beck v. City of Pittsburgh*, 89 F.3d 966, 976 (3rd Cir. 1996), *cert. denied*, 519 U.S. 1151 (1997), the court held that the mere fact that the city had a procedure to receive and investigate complaints of excessive force did not shield the city from liability. Rather, the court considered the credibility of the investigations and noted that in several instances the investigations made unjustified assumptions in favor of the officer in question. Although Plaintiff has not yet had the opportunity to thoroughly examine the investigations in the case at hand, the Affidavit of Janine Mather suggests that the investigations of the University did

not question important witnesses who could corroborate key facts, did not seek any follow-up evidence that would rebut the defenses made, and made unjustified and unsupported presumptions in favor of male police officers. *See also Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553 (1st Cir. 1989) (holding that investigations which contain glaring inadequacies do not shield defendants from qualified immunity).

The Defendants also argue that since appeals board overturned the disciplinary action imposed against Bailey stemming from the Binkley investigation, there was nothing else that could be done. This argument ignores numerous inherent fact issues: 1) because the conclusions in the investigation are questionable and appear to be based on unjustified presumptions in favor of Bailey, the allegations of sexual misconduct were improperly deemed unfounded and the entire disciplinary process was tainted from the outset; (2) there is no evidence whatsoever that Defendants (or employees under their direction) made a genuine attempt during the appeal to support the disciplinary actions against Bailey, (3) the evidence is unsubstantiated that the results of the appeals board were unassailable and no remedy to discipline Bailey was available; and (4) the University cannot insulate itself from disciplining employees by adopting such a policy. *See e.g. Beck v. City of Pittsburgh*, 89 F.3d at 976.

Finally, Defendants argue that because the University had a formal policy in place prohibiting sexual assault and harassment, they cannot be held liable. The formal policies written by University attorneys and administrators are not the policies in question in this suit, but rather the day-to-day practices and unwritten polices that appear to have tolerated sexual misconduct on the part of male police officers. *See e.g. Brown v. Bryan*, 219 F3d 450, 457-58 (5th Cir. 2003) (the informal failure to train police officer in one instance could be found to be a "policy" of county). As set forth in the Mather Affidavit and in Plaintiff's complaint, the evidence raises serious fact issues as to whether

Defendants Van Slyke and Faulkner approved of an informal policy of tolerating misconduct by male police officers and failed to take appropriate action in response to allegations of sexual harassment or misconduct brought forward by women.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that the Court deny Defendants' Motion For Summary Judgment, grant Plaintiffs' Motion For Continuance, allow discovery to be conducted in this case, and grant such further relief to which Plaintiffs' may be entitled.

Respectfully submitted,

**HOWARD & KOBELAN**
Attorneys at Law
100 Congress, Suite 1720
Austin, Texas 78701
(512) 480-9300
(512) 480-9374 (Facsimile)

By: _/s/ Derek A. Howard_
Derek A. Howard
State Bar No. 10064600
Robert W. Schmidt
State Bar No. 17775429
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

By my signature above, I certify that a true and correct copy of the above and foregoing document has been forwarded via First Class US Mail to the following on this 8th day of December, 2003:

| ATTORNEY FOR FAULKNER & VAN SLYKE, | ATTORNEY FOR SELLERS BAILEY, |
|---|---|
| Linda Halpern | W. Reed Lockhoof |
| General Litigation Division | General Litigation Division |
| P.O. Box 12548, Capitol Station | P.O. Box 12548, Capitol Station |
| Austin, Texas 78711-2548 | Austin, Texas 78711-2548 |
| (512) 463-2120 | (512) 463-2080 |
| (512) 320-0667 fax | (512) 495-9139 fax |